UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD CALLAGHAN, an individual,

      Plaintiff,

v.	Case No: 2:18-cv-336-FtM-99CM

US CENTER FOR SAFE SPORT,

      Defendant.

_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. 29) filed on July 3, 2018. Plaintiff filed a Response in Opposition (Doc. 38) on July 17, 2018. For the reasons set forth below, the Motion is granted.

## BACKGROUND

On May 14, 2018, Plaintiff Richard Callaghan, a professional figure skating coach, filed a two-count Verified Complaint (Doc. 1) for breach of contract, alleging that Defendant U.S. Center for Safe Sport (Safe Sport) violated its own rules and procedures in investigating allegations of sexual misconduct filed against Plaintiff by Craig Maurizi, a former competitive figure skater. Prior to serving Defendant, Plaintiff filed an Amended Complaint (Doc. 9), and after service filed a Second Amended Complaint (Doc. 23),

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

adding a count for Declaratory Judgment. The Second Amended Complaint alleges as follows:

### A. Craig Maurizi's 1999 Grievances

Plaintiff Richard Callaghan is one of the most venerated professional figure skating coaches in U.S. Olympic history. Callaghan now lives in Lee County, Florida. (Doc. 23, ¶ 1, 6). In the 1970s and 80s, Craig Maurizi was a competitive figure skater. (*Id.*, ¶ 8). Callaghan served as Maurizi's coach from 1977 (when Maurizi was thirteen-years old) until 1987, at which time, Maurizi turned professional and served as Plaintiff's assistant coach, off and on, until 1998. (*Id.*)

In 1999, Maurizi did an interview for the *New York Times*, asserting that Plaintiff had engaged in an inappropriate but consensual sexual relationship with Maurizi for more than sixteen years, starting when Maurizi was 18-years old and ending when he was 34-years old. (*Id.*, ¶ 9; Doc. 23-1). Plaintiff denied Maurizi's claim. (*Id.*) On April 21, 1999, Maurizi filed a formal grievance with the USFS, then known as the U.S. Figure Skating Association, alleging that Plaintiff had engaged in an inappropriate sexual relationship with him, dating back to 1985. (Doc. 23, ¶ 11). On that same date, Maurizi filed the same grievance, based on the same allegations, against Plaintiff with the Professional Skater's Association (PSA). (*Id.*)

On May 28, 1999, USFS notified Maurizi that his grievance had been dismissed because it was "time barred" under its rules then in effect. (Doc. 23-2). At that time, Article XXVII Section 3(a)(ii) of the USFS's bylaws provided, in part, that "[a] grievance must be filed within sixty (60) days of the occurrence of the alleged violation, or within sixty (60) days of the discovery of the alleged violation, whichever is later." (Doc. 23, ¶

12; Doc. 23-2). Because the alleged violations had occurred 14-years earlier, and Maurizi was aware of the alleged misconduct at the time it occurred, USFS held that Maurizi's grievance was untimely under its rules. (*Id.*)

The PSA considered Maurizi's grievance, empaneling a committee of three impartial arbitrators. Each side presented numerous submissions to the Committee. (Doc. 23, ¶ 13). On October 26, 1999, the PSA notified Maurizi that it had dismissed his grievance against Plaintiff, stating in part: "Upon review of all of the files and proceedings in this matter, the committee has determined that based on the evidence submitted, the grievance should be dismissed. Proof was not presented in this claim by clear and convincing evidence." (Doc. 23-3).

**B. Craig Maurizi's 2018 Grievances and Safe Sport's Investigation**

Fast forward nineteen years. On a date unknown to Plaintiff but believed to be sometime in February 2018, Maurizi refiled with Safe Sport the same grievances he had filed against Plaintiff with USFS and PSA nineteen years earlier. (Doc. 23, ¶ 20). On March 6, 2018, Safe Sport's Legal Affair Director, Michael Henry, emailed Plaintiff a Notice of Alleged Safe Sport Violation & Interim Measure ("Notice") (Doc. 23-6), but Plaintiff alleges he did not receive the Notice, instead learning from a colleague about the suspension on March 8, 2018. (*Id.*, ¶¶ 22, 23). Per the Notice, Safe Sport suspended Plaintiff, effective immediately, from participating in any capacity in any events or competitions sponsored or recognized by the USOC or NGBs, including USFS. (*Id.*, ¶ 22). After learning of the Notice, Plaintiff's legal counsel contacted Safe Sport, was provided a copy of the Notice, and was informed that Safe Sport had received a complaint

against Plaintiff, alleging that Plaintiff had engaged in an inappropriate sexual relationship, but refused to identify the reporting party or the alleged victim. (*Id.*, ¶ 26).

The Notice also stated that interim measures were being implemented pending resolution of the allegations, in pertinent part stating:

**Interim measures**

…

SUSPENSION, beginning on March 6, 2018, Richard Callaghan is prohibited from participating, in any capacity, in any activity or competition authorized by, organized by, or under the auspices of the United States Olympic Committee, the national governing bodies recognized by the United States Olympic Committee, including U.S. Figure Skating and/or a Local Affiliated Organization of a national governing body recognized by the United States Olympic Committee.

. . .

**Interim measures hearing**

You have the right to request a hearing before an independent arbitration body within 24 hours of notice conducted pursuant to the Supplemental Rules of U.S. Olympic and Paralympic Movement SafeSport Arbitrations Rule 40. <u>If you would like a hearing on the interim suspension, please contact me by email (Michael.henry@safesport.org) no later than March 7, 2018 at 5:00 MT</u>.

(Doc. 23, ¶ 27; Doc. 23-6 (emphasis in original)). The Notice does not identify Maurizi as the reporting party, instead stating: "It is alleged that you had an inappropriate sexual relationship with a minor athlete; that you exposed yourself to another minor athlete; and that you made inappropriate sexual remarks and/or sexual advances toward several other [potentially minor] athletes." (*Id.*, ¶ 28; Doc. 23-6).

On March 9, 2018, Germain Arena, where Plaintiff trained his students, announced that it was terminating Plaintiff's privileges because of Safe Sport's actions. (Doc. 23, ¶

4

29).  Plaintiff was also relieved of his duties as Chief Operating Officer of Champions of America. (*Id.*)

The Notice set off a flurry of responses from Plaintiff's legal counsel and subsequent communication with Safe Sport's external investigator, Kai McGintee, Esq., who was assigned to investigate the allegations contained in the Notice.  The Court will only summarize those filings but suffice it to say that Plaintiff believed that Defendant was subverting his due process rights to notice and a fair hearing and failing to follow their own internal policies, procedures, and arbitration rules.

Plaintiff's counsel initially took the position that arbitration was appropriate and demanded that Maurizi's claims proceed to arbitration.  Plaintiff's legal counsel requested that Safe Sport dissolve Plaintiff's suspension or arrange for an immediate interim measure hearing before an independent arbitrator so that Plaintiff could contest the suspension, in accordance with R-40 of its Arbitration Rules.  Safe Sport did not respond to the letter and ignored Plaintiff's request.  (Doc. 23, ¶ 30; Doc. 23-7).  McGintee acknowledged that Plaintiff had raised concerns about the sufficiency of the Notice, but nevertheless requested a date and time when she could interview Plaintiff in Florida concerning the allegations.  (*Id.*, ¶ 32).  Plaintiff's counsel has succeeded in delaying the interview due to his concerns, as it does not appear that it has taken place.  (*Id.*, ¶ 33; Doc. 23-9).

On March 13, 2018, Maurizi appeared for an interview on *Good Morning America*, complaining of a deliberate "cover up" when USFS had dismissed his grievance 19-years earlier, and confirming that he had filed the complaint with Safe Sport that prompted Callaghan's suspension.  (Doc. 23, ¶ 31; Doc. 23-8).

5

**C. The Relevant Statutes - USOC and Safe Sport**

Under the Ted Stevens Olympic and Amateur Sports Act (Amateur Sports Act), [36 U.S.C. § 220501](), *et. seq.*, Congress provided the United States Olympic Committee (USOC) with exclusive jurisdiction over all matters concerning the United States' participation in the Olympic Games. The USOC regulates amateur athletics and amateur sports organizations, including Olympic and Pan-American Games. The USOC is required "[t]o provide swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations, and protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition." [36 U.S.C. § 220503(8)](). The USOC, a federally-chartered, non-profit corporation, is responsible for selecting a national governing body (NGB) for each amateur sport. The USOC recognizes United States Figure Skating (USFS) as the NGB for ice figure skating in the United States.[2]

In March of 2017, USOC chartered the United States Center for SafeSport (SafeSport) and Congress recently enacted legislation to address the issue of athlete abuse. Signed into law on February 14, 2018, the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, [36 U.S.C. § 220503(15)]() (the "Safe Sport Act"), amended and was added to the purposes of the Amateur Sports Act, "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete." The Amateur Sports Act, as amended, now provides that Safe Sport "shall . . . exercise jurisdiction over" the USOC and NGBs "with

---

[2] Plaintiff is a member of USFS and alleges that his continued membership is a necessary and essential condition of his career as a professional figure skating coach. ([Doc. 23](), ¶ 7).

regard to safeguarding amateur athletes against abuse, including physical, emotional, and sexual abuse, in sports." 36 U.S.C. § 220541(a)(2).

The Safe Sport Act provides that Safe Sport develop "policies and procedures" to prevent the abuse of amateur athletes through NGBs, and that it establish "mechanisms that allow for the reporting, investigating, and resolution . . . of alleged sexual abuse in violation of the Center's policies and procedures." 36 U.S.C. § 220541(a)(3), (4). Those policies and procedures shall apply as though they were incorporated in and made a part of section 220524 of this title." *Id.* § (b). The Safe Sport Act also mandates that Safe Sport "ensure that the mechanisms" for reporting, investigation, and resolution" provide for "fair notice and opportunity to be heard." 36 U.S.C. § 220541(a)(5).

The USOC requires each NGB to "comply" with Safe Sport's policies and procedures. *USOC Bylaws*, eff. Mar. 9, 2017, at Sec. 8.7(1). The Safe Sport Act also provides that Safe Sport's policies and procedures shall be "incorporated and made a part of" the general duties of NGBs under Section 220524 of the Amateur Sports Act. The USOC and each NGB must enforce Safe Sport's sanctions against the members of their organizations. *Safe Sport Policies and Procedures for the U.S. Olympic and Paralympic Movement*, at Art. VI(C).) Safe Sport has "exclusive authority" in investigating and adjudicating "actual and suspected sexual misconduct" by coaches, athletes, and other "covered individuals" against amateur athletes in sports throughout the United States, including in the State of Florida. *Id.*, Art. I(B)(1).

### D. Plaintiff's Claims

Count I alleges breach of contract. In support of a contractual relationship between the parties, Plaintiff pleads that there are "interlocking agreements between Safe Sport,

7

USOC, NGBs, and members of the NGBs" that "are intended for swift and just resolution of disputes in amateur athletics and to protect the right of U.S. athletes and coaches, like Plaintiff, to participate in amateur athletic competition." (Doc. 23, ¶ 69). Plaintiff does not identify a specific contract that the parties entered into, but nevertheless, Plaintiff alleges that Safe Sport breached its "contractual obligations" in the following ways: (1) improper immediate suspension despite the fact that Safe Sport had not received an imminent threat of harm to warrant an emergency interim measure; (2) failure to apply USFS's rules and dismiss Maurizi's complaint; and (3) Safe Sport's attempt to give retroactive effect to the 2018 amendments. Due to Defendant's breaches, Plaintiff seeks a temporary and permanent injunction enjoining Safe Sport and its external investigator from:

(a) taking any action to enforce Plaintiff's suspension from participating in USOC and USFS sanctioned events and activities, in violation of the 2017 Procedures and Rules,

(b) refusing to apply USFS's rules in effect at the time of the alleged violations and dismiss Mr. Maurizi's complaint as time barred, as USFS did in 1999, in violation of the 2017 Procedures and Rules,

(c) applying, enforcing, or attempting to enforce the 2018 Amendments in any proceedings against Plaintiff, now or in the future, in which the alleged conduct predates the effective date of the amendments, and

(d) or from otherwise depriving or interfering with Plaintiff's membership as a member, in good standing, with USFS.

(Doc. 23, ¶ 74).[3]

Count II alleges "breach of contract contractual due process," stating that "Safe Sport has a contractual obligation to provide due process to Plaintiff." (Doc. 23, ¶ 77).

---

[3] This is the requested relief under Count I, but Plaintiff's WHEREFORE clause at the end of the Second Amended Complaint requests slightly different relief. *See* Doc. 23, pp. 28-29.

Plaintiff alleges that Safe Sport has not provided Plaintiff with "fair notice" of the allegations against him or the portions of the Code of Conduct he is alleged to have violated in contravention of 36 U.S.C. § 25041(a)(5). (*Id.*, ¶¶ 78-79). Plaintiff argues that Maurizi's grievances are time barred outside the 60-days, which was found in 1999. Plaintiff seeks the same injunctive relief as set forth under Count I. (*Id.*, ¶ 91).

Count III is a claim for declaratory judgment. Plaintiff alleges that Safe Sport's reservation of rights to unilaterally modify its policies and procedures without notice or approval of covered individuals is inconsistent with Safe Sport's statutory duty to ensure that is establishes mechanisms for fair notice and an opportunity to be heard in investigation and resolution of alleged sexual abuse in violation of its policies and procedures. *See* 36 U.S.C. § 25041(a)(5). Therefore, Plaintiff requests a declaratory judgment, adjudging and declaring that:

(a) Safe Sport's reservation of rights to make unilateral changes to its policies and procedures and arbitration rules, especially any attempt to apply the changes to reports or proceedings that arose before the posting or effective date of the amendments, renders the agreement between Safe Sport and Plaintiff illusory and unenforceable, and

(b) Safe Sport is permanently barred from taking any action against Plaintiff for conduct that occurred, or allegedly occurred, prior to the effective date of the 2017 Procedures and Rules.

Alternatively, Plaintiff requests a declaratory judgment from this Court, adjudging and declaring that:

(a) Safe Sport's unilateral 2018 Amendments are severable from the 2017 Policies and Rules and are unenforceable as to reports or proceedings relating to Plaintiff that occurred, or allegedly occurred, before the posting or effective date of the Amendments, and

(b) Safe Sport is barred from taking any action against Plaintiff relating to conduct that occurred, or allegedly, occurred, before the effective date of the 2017 Policies and Rules.

(Doc. 23, ¶ 102).

**DISCUSSION**

Defendant first argues that Plaintiff has failed to exhaust his administrative (including arbitral) remedies, provided for under Safe Sport's rules. A motion to dismiss for failure to exhaust administrative remedies is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. See *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The Court is permitted to consider facts outside of the pleadings and to resolve factual disputes in ruling on the motion to dismiss for failure to exhaust administrative remedies. See *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). Although there is no explicit mention of an administrative exhaustion requirement in the Safe Sport Act, the USOC has exclusive jurisdiction, under the Amateur Sports Act, to determine all matters pertaining to athlete eligibility. *Slaney v. The Intern. Amateur Athletic Foundation*, 244 F.3d 580, 594 (7th Cir. 2001). The Amateur Sports Act also states that the USOC is designed "to provide swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations." *Id.* at § 220503(8). In turn, Safe Sport has exclusive authority over actual or suspected sexual misconduct. (Doc. 23-4). USOC and Safe Sport have developed an investigatory process that is conducted by individuals with the requisite expertise to fairly adjudicate the allegations of sexual abuse. The general purpose of an exhaustion requirement is so that a specialized entity may have the first opportunity to investigate and, if appropriate, negotiate a resolution. See *Gregroy v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (discussing EEOC exhaustion). The Court sees no

10

reason why an exhaustion requirement should not apply in this case and Plaintiff does not seem to be arguing against such an application in this case.[4]

Instead, Plaintiff suggests that he is justified in failing to exhaust his administrative remedies and is entitled to proceed in this Court because through the adoption of its 2018 Amendments, Safe Sport attempted to limit, if not eliminate, any administrative remedies available to him. Thus, Plaintiff argues that he does not have an administrative remedy or avenue of redress for his allegations that Safe Sport breached its own rules in instituting the interim suspension measure against him. (Doc. 23, ¶ 65). In support, Plaintiff notes that the scope of Safe Sport's arbitration rules expressly precludes challenges to whether it has violated its own practices and procedures. (Doc. 23-31, R-2). Plaintiff argues that an arbitrator does not have jurisdiction to hear his challenges. (Doc. 23, ¶ 83). Safe Sport responds that pursuant to Safe Sport's arbitration rules, it would be for the arbitrator to rule on the arbitration body's jurisdiction, citing R-11 of the Arbitration Rules. (Doc. 23-18, ¶ R-11(a)).

Here, the Court agrees that the arbitrator may determine whether Plaintiff's claims raised in this lawsuit are subject to arbitration and therefore Plaintiff does have an avenue for redress through arbitration. Undisputedly, the administrative proceedings are not final and Safe Sport has stated its willingness to have an independent arbitrator conduct the review of the interim suspension measure (Doc. 23-35). Because the parties dispute whether they agreed to arbitrate the complaints that Plaintiff raises in this lawsuit, the Court examines the applicable Arbitration Rules. In doing so, the Court notes that there are three copies of the "Supplementary Rules for U.S. Olympic and Paralympic Safe Sport

---

[4] Indeed, Plaintiff alleges in the Second Amended Complaint that he attempted to exhaust his administrative remedies. (Doc. 23, ¶ 50).

Arbitrations" attached to the Second Amended Complaint at Docs. 23-18, 23-31, and 23-34 ("Supplementary Rules"). Both parties cite to Doc. 23-31 in their briefs (Doc. 29, p. 7; Doc. 38 p. 7), so this is the version the Court will use.[5]

The Supplementary Rules open with this paragraph:

**R-1. Application**

The *Commercial Arbitration Rules of the American Arbitration Association*, as modified by these Supplementary Rules for U.S. Olympic and Paralympic SafeSport Arbitration Rules (Rules) shall apply to arbitrations arising out of the SafeSport Practices and Procedures for the U.S. Olympic and Paralympic Movement (Procedures). If there is a variance between the Commercial Arbitration Rules and these Rules, these Rules govern.

(Doc. 23-31, ¶ R-1) (emphasis added). The Supplementary Rules then state the following, which is the paragraph that Plaintiff hangs his argument on:

**R-2 Scope**

Arbitration shall only resolve whether a Responding Party violated the Safe Sport Code for the U.S. Olympic and Paralympic Movement (Code) and/or the appropriate sanction (if any). Challenges to, or complaints about, any organization practices or procedures shall not be addressed and the arbitrator shall be limited to evaluating whether a Covered Individual violated the Code and if so, the appropriate sanction.

(*Id.*, ¶ R-2). Although paragraph R-2 seemingly limits the scope of topics that the arbitrator might consider, paragraph R-11 states:

**R-11 Jurisdiction and Conflicts of Interest**

a. **Jurisdiction**

The arbitrator shall have the power to rule on the arbitration body's jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. Any challenges to the arbitrator's jurisdiction must be

---

[5] The Court may consider these attachments in ruling on Defendant's Motion to Dismiss without converting the same into a motion for summary judgment. *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

>made at the pre-hearing conference and shall be decided before the hearing, as set forth in R-15.

(*Id.,* ¶ R-11(a)). Thus, under Paragraph R-11, Plaintiff may raise his objections to the scope of what may be considered at arbitration, which could include Plaintiff's procedural concerns raised in this lawsuit. This is similar to Rule 8(a) of the AAA Commercial Arbitration Rules, which provides that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." See *Spirit Airlines, Inc. v. Maizes*, --- F.3d ---, 2018 WL 3866335 (11th Cir. Aug. 15, 2018) (quoting AAA Rule 8(a)).

The Court is mindful that Safe Sport took the position in a June 5, 2018 letter to Plaintiff's counsel that the interim measures hearing before an arbitrator would not address Callaghan's procedural concerns regarding the Notice, citing to the language of Supplementary Rule R-2. (Doc. 23-35). However, this is only Safe Sport's position[6], which it may take in front of the arbitrator, but under the Arbitration Rules, "[e]ach arbitrator shall be independent" and has no affiliation with Safe Sport, the USOC, or any NGB and shall exercise their own independent judgment. (Doc. 23-19, Exh. 3).

Here, Plaintiff seeks judicial review of Safe Sport's breach of its own internal procedures and arbitration rules. (Doc. 23, ¶¶ 64-67). However, these concerns may be considered by the arbitrator, but Plaintiff has failed to raise them in that forum. Therefore, the Second Amended Complaint will be dismissed without prejudice for failure to exhaust administrative remedies.

Accordingly, it is now

---

[6] This position taken by Safe Sport in its June 5, 2018 letter seems to be contradicted by the arguments made in its Motion to Dismiss that it would be for the arbitrator to rule on the arbitration body's jurisdiction. (Doc. 29, p. 7).

**ORDERED:**

(1)     Defendant's Motion to Dismiss (Doc. 29) is **GRANTED**.  Plaintiff's Second Amended Complaint (Doc. 23) is dismissed without prejudice.  The Clerk is directed to enter judgment accordingly, terminate any pending deadlines, and close the file.

(2)     Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 25) is **denied as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida this 28th day of August, 2018.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record